IN THE MATTER OF: ALEXANDRIA IVEY, AMBER IVEY, JOSHUA IVEY

No. COA02-439

(Filed 4 March 2003)

**1. Child Abuse and Neglect— nonsecure custody—no petition alleging neglect or abuse**

The trial court erred by ordering DSS to assume nonsecure custody of an infant where three older siblings were being placed in a guardianship but DSS had not filed a petition alleging that the infant was an abused or neglected child. The narrow exception of N.C.G.S. § 7B-500(a) did not apply because there was no evidence or findings that the child would be injured or could not be taken into custody if DSS were required to first file a petition and obtain an order.

**2. Child Abuse and Neglect— DSS and guardian ad litem reports—not admitted during hearing—considered by court**

The trial court did not err when making a permanency planning determination by considering DSS and guardian ad litem reports which complied with local rules for submitting reports even though those reports were not admitted into evidence during the hearing. Respondents were given prior notice of the reports and the opportunity to present evidence against them.

**3. Appeal and Error— hearsay—no objection—appellate review waived**

Respondents waived their right to assign error to the admission of hearsay at a permanency placement hearing by failing to object either to the initial question or to further questions.

**4. Child Abuse and Neglect— homelessness and joblessness— not abuse or neglect per se**

Neither homelessness nor joblessness will per se support a finding of child abuse or neglect.

Appeal by respondents from an order filed 13 September 2001 by Judge Julia Gullett in Iredell County District Court. Heard in the Court of Appeals 22 January 2003.

*Thomas R. Young, for the Petitioner-Appellee, Iredell County Department of Social Services.*

IN RE IVEY

[156 N.C. App. 398 (2003)]

*Womble Carlyle Sandridge & Rice, PLLC, by Garth A. Gersten, for Appellee Guardian Ad Litem.*

*Robert W. Ewing, for Respondent-Appellant father.*

*David Childers, for Respondent-Appellant mother.*

TYSON, Judge.

Leah Wilkins ("respondent-mother") and Jerry Wilkins ("respondent-father") jointly appeal from a permanency planning review order. The trial court ordered that their three children, Alexandria, Amber, and Joshua, be placed in guardianship with relatives. The trial court relieved the Iredell County Department of Social Services (DSS) of further efforts toward reunification. The trial court also ordered DSS to assume non-secure custody of Joriah, the infant child residing with respondents, who was not a subject of the juvenile petition.

## I. Background

Leah Wilkins is the mother of Alexandria, Amber, Joshua, and Joriah. Jerry Wilkins is the step-father of Alexandria and the father of Amber, Joshua, and Joriah. DSS became involved with the family in September of 1998 due to allegations of lack of care of the children and concerns that the home environment was injurious to the welfare of the children. There were claims of instability of housing, domestic and substance abuse. Since DSS became involved, both respondents have been in and out of jail, lived in multiple homes or have been homeless, and have been unemployed or engaged in short-term temporary work.

On 18 February 2000, DSS filed juvenile petitions to adjudicate Alexandria, Amber and Joshua as neglected. The hearing was held on 12 May 2000. On 9 June 2000, the trial court adjudicated the three children neglected. DSS assumed legal custody for the children while physical custody remained with respondents. On 3 August 2000, DSS received non-secure physical custody and the children were placed with the children's maternal uncle and aunt, Isaac and Candance Ivey. Amber and Joshua have remained in the Ivey's physical custody since that time. Alexandria was placed in foster care and ultimately in the physical custody of Larry and Rebecca Harrison, another maternal uncle and aunt, where she has remained.

After DSS received non-secure physical custody of the children, it established a concurrent plan of reunification with the parents and

placement with relatives. The trial court held review hearings and continued to allow DSS to retain physical custody of the three children. During this time, Joriah was born and remained in the custody of the respondents.

In July of 2001, respondent mother signed a voluntary support agreement with the IV-D agency. On 12 July 2001, a permanency planning review was held. DSS and the guardian ad litem submitted summaries and reports dated 7 June 2001. At the hearing, respondents stated that they were now employed and were in the process of buying a "nice" home "in a nice neighborhood." The hearing was continued from July until 31 August 2001 "so as to allow substantiation of the Respondent mother's statements and to allow the Respondent Parents to supplement said statements with appropriate financial affidavits."

On 29 August 2001 DSS filed a "Juvenile Court Summary" and the guardian ad litem filed a "Guardian Ad Litem Court Report." The permanency planning hearing was held on 31 August 2001. Along with the testimony presented at the hearing, the trial court reviewed the DSS summary and guardian ad litem court report.

The trial court found:

f. The Court, in reviewing the file and in hearing the testimony provided in court would find a protracted history of instability and chaos. The Respondent Parents have never admitted that they played any role in their children's placement in custody, nor due [sic] they take any responsibility for their actions presently which has seen them in a consistent cycle of incarceration, unemployment, and homelessness. The Court would further find that such an environment has been in place for too long for reunification to be a reasonable goal and that no child, including the infant who presently resides with the Mrs. Wilkins, should be forced to endure such circumstances.

. . .

h. The Court would further find that non-secure custody should be taken of the infant presently living in the Wilkins home, to be followed as reasonably soon as possible with a Juvenile Petition.

The trial court concluded:

5. Reunification in the home would be contrary to the safety, health and welfare of the child and would be futile under the

circumstances. Guardianship is in the best interest of the minor children.

The trial court ordered that permanent guardianship of Alexandria be placed with the Harrisons and guardianship of Amber and Joshua be placed with the Iveys. It further ordered "[t]he Department of Social Services shall assume non-secure custody of the infant child presently residing with the Respondent Parents." Respondents appeal.

## II. Issues

Respondents contend the trial court erred (1) in ordering DSS to assume nonsecure custody of the infant child; (2) in relying on a report from DSS and a report from the guardian ad litem in making its permanency planning determination; and (3) in admitting hearsay evidence.

## III. Nonsecure custody of the infant child

[1] Respondents assert that the trial court erred in ordering DSS to assume nonsecure custody of an infant child where no petition had been filed and the trial court did not have jurisdiction over the child. We agree.

N.C. Gen. Stat. § 7B-502 (2001) gives the district court authority to issue an order placing a child in nonsecure custody "[i]n the case of any juvenile alleged to be within the jurisdiction of the court." N.C. Gen. Stat. § 7B-503(a) sets forth the criteria for nonsecure custody and states: "An order for nonsecure custody shall be made only when there is a reasonable factual basis to believe the matters alleged in the petition are true . . . ." At the time of the hearing, DSS had not filed any petition alleging that Joriah was an abused or neglected child. Without such petition, the trial court did not have the jurisdiction to order DSS to assume nonsecure custody of him.

DSS contends that it had authority to take the child into custody under N.C. Gen. Stat. § 7B-500 which states:

Temporary custody means the taking of physical custody and providing personal care and supervision until a court order for nonsecure custody can be obtained. A juvenile may be taken into temporary custody without a court order by a law enforcement officer or a department of social services worker *if there are reasonable grounds to believe that the juvenile is abused, neglected, or dependent <u>and</u> that the juvenile would be injured or could*

*not be taken into custody if it were first necessary to obtain a court order.*

N.C. Gen. Stat. § 7B-500(a) (emphasis supplied). A juvenile may not be taken into custody without a valid court order just because the juvenile is "believed" to be abused, neglected, or dependent. There must also be "reasonable grounds to believe" that "the juvenile would be injured or could not be taken into custody if it were first necessary to obtain a court order." N.C. Gen. Stat. § 7B-500(a). This statute is a narrow exception to the requirement that a petition must be filed prior to the issuance of a court order for non-secure custody. DSS presented no evidence and there are no findings of fact in the order that Joriah "would be injured or could not be taken into custody" if DSS were required to first file a petition and obtain an order.

We hold that the trial court erred in ordering DSS to assume non-secure custody of Joriah and vacate that part of the order. Our vacating the order to assume nonsecure custody of the infant does not affect any petition, hearing, or order for nonsecure custody filed, heard or rendered subsequent to the order appealed.

### IV. Reports of DSS and Guardian Ad Litem

[2] Respondents contend that the trial court erred in basing its decision on facts in a DSS court summary and a guardian ad litem report which were not admitted into evidence during the planning review hearing. Respondents admit that N.C. Gen. Stat. § 7B-901 allows the trial court to consider written reports concerning the needs of the children. They contend that the trial court erred in considering the reports when they did not have the opportunity to cross-examine the reports because of lack of notice and lack of admission. We disagree.

N.C. Gen. Stat. § 7B-907(b) states, "At any permanency planning review, the court shall consider information from the parent, the juvenile, the guardian, any foster parent, relative or preadoptive parent providing care for the child, the custodian or agency with custody, the guardian ad litem, and any other person or agency which will aid it in the court's review." N.C. Gen. Stat. § 7B-901 states, "The dispositional hearing may be informal and the court may consider written reports or other evidence concerning the needs of the juvenile." "The statutes lead to but one conclusion: In juvenile proceedings, trial courts may properly consider all written reports and materials submitted in connection with said proceedings." *In re Shue*, 63 N.C. App.

76, 79, 303 S.E.2d 636, 638 (1983), *modified and aff'd*, 311 N.C. 586, 319 S.E.2d 567 (1984). Rule 20 of the Local Rules of Juvenile Court for Iredell County requires DSS and the guardian ad litem to submit reports to counsel for all parties "at least 2 working days prior to each disposition and review hearing." Rule 20(b) and (c) of the Local Rules of Juvenile Court for Iredell County (1999).

The original permanency planning hearing took place on 12 July 2001. Prior to that hearing, both DSS and the guardian ad litem submitted written reports which respondents admittedly received. Respondents presented information regarding their employment and housing to rebut the allegation of instability and homelessness. The trial court continued the hearing until 31 August 2001. On 29 August 2001, two days prior to the scheduled hearing, both DSS and the Guardian ad Litem submitted another set of reports to the trial court. Respondents do not contend that DSS or the guardian ad litem failed to follow the Local Rules of Juvenile Court or failed to provide the documents to their counsel at this time.

Shauna Heavner, a Foster Care Worker with DSS who submitted the report for DSS, testified at trial without questioning by counsel for either respondent. Only respondent-mother elected to present evidence at the hearing although both respondents were given the opportunity. Neither respondent requested a continuance due to lack of notice regarding the documents.

We hold the trial court did not err in considering the DSS and guardian ad litem reports which complied with the local rules for submitting reports. Respondents were given prior notice of the reports and the opportunity to present evidence against them. This assignment of error is overruled.

## V. Hearsay Evidence

[3] Respondents contend the trial court erred in admitting the hearsay testimony of Ms. Heavner regarding respondents' living situation, characterization of the home they were considering purchasing, credit worthiness of respondents, respondent-mother's employment information and respondent-father's criminal record. At the hearing, the only hearsay objection came to Ms. Heavner's statement "From what we gathered from Mallard Creek, Mr. and Mrs. Wilkins were able to go to Mallard Creek to pick up possessions and would unlock windows." Respondents did not object to any other testimony nor did they place a continuing objection in the record regard-

ing hearsay answers. Further questions were asked regarding the living conditions at Mallard Creek to which respondents did not object. By failing to object to further questions, respondents have waived their right to assign and appeal error as to those questions. N.C. R. App. P. 10(b)(1) (2002).

## VI. Conclusion

[4] While the trial court made references to respondents' intermittent homelessness and joblessness, neither homelessness nor joblessness will *per se* support a finding of abuse or neglect. *In re Evans*, 81 N.C. App. 449, 452-53, 344 S.E.2d 327-28 (1986). We hold that the trial court erred in ordering DSS to assume nonsecure custody of the infant child and vacate that portion of the order. We also hold that there was no error in admitting the reports from DSS and the guardian ad litem and the testimony of Ms. Heavner.

Affirmed in part, vacated in part.

Judges TIMMONS-GOODSON and LEVINSON concur.