[171 N.C. App. 488 (2005)]

IN THE MATTER OF: K.C.G. AND J.G., MINOR CHILDREN

No. COA04-902

(Filed 19 July 2005)

## 1. Child Abuse and Neglect— jurisdiction—ex parte order—cease interference with DSS investigation

The trial court had jurisdiction to issue an ex parte order to cease respondent mother's interference with DSS's investigation, because: (1) N.C.G.S. § 7B-200(a) provides that the court has exclusive original jurisdiction over any case involving a juvenile who is alleged to be abused, neglected, or dependent and also has exclusive original jurisdiction over proceedings in which a person is alleged to have obstructed or interfered with an investigation required by N.C.G.S. § 7B-302; and (2) in the instant case DSS received a report that the younger child was neglected and initiated an investigation, DSS filed a petition of obstruction of or interference with a juvenile investigation seeking an ex parte order commanding respondent mother to cease interference with the investigation and allow the child to be examined, and the trial court concluded as a matter of law that respondent obstructed or interfered with the investigation in that she refused to allow the child to be examined in a Child Medical Evaluation and interfered with the social worker's ability to interview the two children thus giving the court exclusive original jurisdiction over the case under N.C.G.S. § 7B-200(a)(6).

## 2. Child Abuse and Neglect— sole and exclusive temporary custody without a court order—failure to request nonsecure custody

The trial court did not have authority to place sole and exclusive temporary custody of the two minor children with the father without proper notice to the parties and without a juvenile abuse/neglect/dependency petition being filed, because: (1) although N.C.G.S. § 7B-500(a) provides a narrow exception for a child to be taken into temporary custody without a court order only by a law enforcement officer or a DSS worker, in this case the judge granted sole and exclusive temporary custody of the minor children to their father; and (2) N.C.G.S. § 7B-503(a) provides that an order issuing nonsecure custody will only be granted when a request is made for nonsecure custody and when there is a reasonable factual basis to believe the matters

IN RE K.C.G. & J.G.

[171 N.C. App. 488 (2005)]

alleged in the petition are true, and in the instant case no request for nonsecure custody was presented alleging that the children were neglected.

Appeal by respondent mother from orders entered 13 February 2004, 26 February 2004, and 19 March 2004 by Judge Richard W. Stone in Rockingham County District Court. Heard in the Court of Appeals 8 March 2005.

*No brief filed for petitioner-appellee.*

*Susan J. Hall, for respondent-appellant.*

TYSON, Judge.

Respondent appeals the trial court's orders allowing R.G. ("father") to have custody over their minor children K.C.G. and J.G. and the trial court's *ex parte* order requiring respondent to cease obstruction of or interference with the juvenile investigation. We affirm in part, reverse in part, and remand.

## I. Background

K.C.G. and J.G. are the minor daughters of father and respondent. Respondent maintained physical custody of K.C.G. and J.G. after her separation from their father. On 16 October 2003, the Rockingham County Department of Social Services ("DSS") received a report alleging neglect of K.C.G. The report alleged: (1) respondent was trying to obtain a prescription of Valium for the child despite doctors' opinions that such a prescription was not appropriate; (2) respondent, who had no medical training, was diagnosing K.C.G. herself; (3) K.C.G. was not attending school; and (4) respondent was "doctor-shopping" for K.C.G.

Beretta Clayton ("Ms. Clayton"), a DSS Child Protective Services Investigator, began an investigation into the allegations regarding respondent and K.C.G. on 16 October 2003. Ms. Clayton visited K.C.G. at school, where she first encountered K.C.G.'s older sibling, J.G., and then respondent, who was also present at school with K.C.G. K.C.G.'s medical records, information from confidential sources, and information obtained through discussions with respondent raised additional concerns about K.C.G. and respondent. Three confidential sources alleged the relationship between respondent and K.C.G. may evidence Munchausen's Syndrome by Proxy, a disorder in which a caretaker fabricates or exaggerates physical manifestations or emotional

IN RE K.C.G. & J.G.

[171 N.C. App. 488 (2005)]

symptoms of a person in their care for whatever reasons. Examples of reasons for the disorder include, sympathy, or a perverse relationship with the other person. Records confirmed respondent had seen many doctors in an attempt to obtain Valium for K.C.G. and had prevented K.C.G. from attending school out of concern the child had an anxiety disorder and other medical problems.

Respondent took K.C.G. to see a psychologist, Dr. Julia Brannon, Ph.D. ("Dr. Brannon"), twice. Respondent informed Dr. Brannon of visits to several doctors for various problems she believed K.C.G. suffered, including teeth-grinding, constipation, and nocturnal seizures. She also said she thought K.C.G. had school phobia, social phobia, panic disorder, and seizures relating to her anxiety about school. Respondent informed Dr. Brannon that K.C.G.'s psychiatrist, Dr. King, had refused to prescribe Valium for K.C.G. Respondent requested Dr. Brannon refer her to a doctor who could prescribe the drug.

Dr. Brannon diagnosed K.C.G. as suffering from a "parent-child relational problem" and concluded K.C.G. did not suffer from the phobias or anxieties respondent claimed. Dr. Brannon stated Munchausen's Syndrome by Proxy is a sort of parent-child relational problem and based on: (1) respondent's vehement belief that she knew more than the professionals about K.C.G.'s condition; (2) respondent herself diagnosing K.C.G.; and (3) the extensive medical treatment K.C.G. had undergone at respondent's request, Dr. Brannon concluded respondent's relationship with K.C.G. may be a case of Munchausen's Syndrome by Proxy and K.C.G. needed further evaluation. In Dr. Brannon's opinion, a doctor should examine the child, the caretaker, and the medical history, including which treatments have been sought for the child, in order to make a determination of whether Munchausen's Syndrome by Proxy was present.

Sometime after the investigation began, respondent withdrew K.C.G. from public school and subsequently received her certification to home school K.C.G. Since that time, all contact between Ms. Clayton and K.C.G. has been at respondent's home while respondent is present. Respondent also requested all interviews of J.G. be performed at home, not at school. J.G. refused to speak with Ms. Clayton at school on 5 February 2004, saying she was not allowed to.

Ms. Clayton advised both respondent and K.C.G.'s father of the nature of the concerns and requested K.C.G. be examined during a Child Medical Evaluation ("CME") which would consist of a physical examination and another appointment for a mental health examina-

IN RE K.C.G. & J.G.

[171 N.C. App. 488 (2005)]

tion. The father signed a consent for the examinations and offered to take K.C.G. to the first appointment on 12 February 2004. Respondent repeatedly refused to allow examinations to occur. Respondent cancelled the 12 February 2004 appointment for the CME physical examination.

On 13 February 2004, DSS filed a petition alleging obstruction of or interference with a juvenile investigation with the Clerk of Superior Court in Rockingham County. On 13 February 2004, an *ex parte* order to cease obstruction of or interference with a juvenile investigation was filed. On 25 February 2004, the court continued the 13 February 2004 order and further ordered that: (1) neither parent would obstruct or interfere with DSS's pending investigation; and (2) respondent would have K.C.G. ready for her father to pick up and transport her to the first CME appointment. The order was not filed until 19 March 2004.

Respondent demanded a hearing on the *ex parte* order. Following an informal emergency hearing on 26 February 2004, a temporary custody order was signed and filed awarding the father temporary sole and exclusive custody of K.C.G. and J.G. On 26 February 2004, a second order was issued declaring that the 25 February 2004 order remained in effect and was stayed only insofar as respondent's own cooperation with and participation in the CME was concerned. The order also denied respondent's motion to seal the results of the CME. The order stated the temporary custody order entered earlier on 26 February 2004 was fully incorporated by reference and awarded temporary custody to the father due to the evidence heard the prior day and the court's concerns about the safety of the children. This order was filed on 19 March 2004. Respondent appeals.

## II. Issues

The issues on appeal are whether: (1) the trial court had jurisdiction to place sole and exclusive temporary custody of the juveniles with the father without proper notice to the parties and without a juvenile abuse/neglect/dependency petition being filed; (2) the court abused its discretion in finding Dr. Brannon to be an expert in psychology and mental disorders due to a lack of evidentiary foundation; and (3) the trial court abused its discretion in concluding as a matter of law that the reports received by DSS, if true, would constitute neglect of the juvenile K.C.G. due to insufficiency of the evidence.

### III. Jurisdiction

#### A. Cease Interference Order

[1] We initially consider whether the trial court had jurisdiction to issue the *ex parte* order to cease respondent's interference with DSS's investigation. N.C. Gen. Stat. § 7B-200(a) (2003) states: "[t]he court has exclusive, original jurisdiction over any case involving a juvenile who is alleged to be abused, neglected, or dependent." In addition, the court also has exclusive original jurisdiction over "[p]roceedings in which a person is alleged to have obstructed or interfered with an investigation required by G.S. 7B-302." N.C. Gen. Stat. § 7B-200(a)(6) (2003). N.C. Gen. Stat. § 7B-302(a) (2003) states:

> [w]hen a report of abuse, neglect, or dependency is received, the director of the department of social services shall make a prompt and thorough investigation in order to ascertain the facts of the case, the extent of the abuse or neglect, and the risk of harm to the juvenile, in order to determine whether protective services should be provided or the complaint filed as a petition.

N.C. Gen. Stat. § 7B-303(a) (2003) provides, "[i]f any person obstructs or interferes with an investigation required by G.S. 7B-302, the director may file a petition naming said person as respondent and requesting an order directing the respondent to cease such obstruction or interference." N.C. Gen. Stat. § 7B-303(b) (2003) states obstruction of or interference with an investigation includes

> refusing to disclose the whereabouts of the juvenile, refusing to allow the director to have personal access to the juvenile, refusing to allow the director to observe or interview the juvenile in private, refusing to allow the director access to confidential information and records upon request pursuant to G.S. 7B-302, refusing to allow the director to arrange for an evaluation of the juvenile by a physician or other expert, or other conduct that makes it impossible for the director to carry out the duty to investigate.

Further, N.C. Gen. Stat. § 7B-303(d) (2003) provides:

> If the director has reason to believe that the juvenile is in need of immediate protection or assistance, the director shall so allege in the petition and may seek an ex parte order from the court. If the court, from the verified petition and any inquiry the court makes of the director, finds probable cause to believe both that the juve-

**IN RE K.C.G. & J.G.**

[171 N.C. App. 488 (2005)]

nile is at risk of immediate harm and that the respondent is obstructing or interfering with the director's ability to investigate to determine the juvenile's condition, the court may enter an ex parte order directing the respondent to cease such obstruction or interference. The order shall be limited to provisions necessary to enable the director to conduct an investigation sufficient to determine whether the juvenile is in need of immediate protection or assistance.

Here, DSS received a report K.C.G. was neglected and initiated an investigation. On 13 February 2004, pursuant to N.C. Gen. Stat. § 7B-303(d), DSS filed a petition of obstruction of or interference with a juvenile investigation seeking an *ex parte* order commanding respondent to cease interference with the investigation and allow K.C.G. to be examined.

According to N.C. Gen. Stat. § 7B-303(d), the court may "enter an ex parte order directing the respondent to cease such obstruction or interference" and the "order shall be limited to provisions necessary to enable the director to conduct an investigation sufficient to determine whether the juvenile is in need of immediate protection or assistance."

The trial court concluded as a matter of law that respondent obstructed or interfered with the investigation in that she refused to allow K.C.G. to be examined in a CME and interfered with the social worker's ability to interview the two children. *See* N.C. Gen. Stat. § 7B-303(b). The trial court had exclusive, original jurisdiction over the case pursuant to N.C. Gen. Stat. § 7B-200(a)(6).

This statute conferred upon the trial court the authority to issue the *ex parte* order to cease interference with DSS's investigation. This assignment of error is overruled.

### B. Custody

[2] We next consider whether the trial court had authority to place K.C.G. and J.G. in the temporary sole and exclusive custody of their father. N.C. Gen. Stat. § 7B-500(a) (2003) governs the procedure for removing and taking a child into temporary custody:

A juvenile may be taken into temporary custody without a court order by a law enforcement officer or a department of social services worker if there are reasonable grounds to believe that the

juvenile is abused, neglected, or dependent and that the juvenile would be injured or could not be taken into custody if it were first necessary to obtain a court order.

"This statute is a narrow exception to the requirement that a petition must be filed prior to the issuance of a court order for non-secure custody." *In re Ivey*, 156 N.C. App. 398, 402, 576 S.E.2d 386, 389 (2003). "In the case of any juvenile alleged to be within the jurisdiction of the court, the court may order that the juvenile be placed in nonsecure custody pursuant to criteria set out in G.S. 7B-503 when custody of the juvenile is necessary." N.C. Gen. Stat. § 7B-502 (2003). N.C. Gen. Stat. § 7B-503(a) (2003) provides in part:

[w]hen a request is made for nonsecure custody . . . [a]n order for nonsecure custody shall be made only when there is a reasonable factual basis to believe the matters alleged in the petition are true, and . . . [a] juvenile alleged to be abused, neglected, or dependent shall be placed in nonsecure custody only when there is a reasonable factual basis to believe that there are no other reasonable means available to protect the juvenile.

In *Ivey*, DSS filed petitions to have the respondents' (mother and father) children adjudicated neglected. 156 N.C. App. at 399, 576 S.E.2d at 388. The trial court adjudicated the three children as neglected and DSS received nonsecure custody of the children. *Id.* While a permanency planning review was pending, the respondent mother gave birth to an infant who remained in the respondents' custody. *Id.* at 400, 576 S.E.2d at 388. At the permanency planning hearing, the court found that "no child, including the infant who presently resides with [the respondent mother], should be forced to endure such circumstances" and the court further found that "non-secure custody should be taken of the infant presently living in the [respondents'] home, to be followed as reasonably soon as possible with a Juvenile Petition." *Id.* at 400, 576 S.E.2d at 388-89.

This Court held the trial court lacked jurisdiction to order DSS to assume nonsecure custody of the infant because "[a]t the time of the hearing, DSS had not filed any petition alleging that [the infant] was an abused or neglected child." *Id.* at 401, 576 S.E.2d at 389. We stated, N.C. Gen. Stat. § 7B-503(a) "sets forth the criteria for nonsecure custody and states: 'an order for nonsecure custody shall be made only when there is a reasonable factual basis to believe the matters alleged in the petition are true . . . .' " *Id.* (quoting N.C. Gen. Stat. § 7B-503(a)). The trial court did not possess jurisdiction to grant DSS nonsecure

**IN RE K.C.G. & J.G.**

[171 N.C. App. 488 (2005)]

custody of the infant because no petition alleging the infant to be an abused or neglected child had been filed. *Id.*

N.C. Gen. Stat. § 7B-500 allows a narrow exception for a child to be taken into temporary custody without a court order only by a law enforcement officer or a department of social services worker. Here, however, the trial judge issued a court order granting sole and exclusive temporary custody of K.C.G. and J.G. to their father. K.C.G. was within the jurisdiction of the court. As established above, N.C. Gen. Stat. § 7B-502 provides the trial judge with authority to place K.C.G. in nonsecure custody "pursuant to [the] criteria set out in G.S. 7B-503." However, an order issuing nonsecure custody will only be granted when "a request is made for nonsecure custody" and "when there is a reasonable factual basis to believe the matters alleged in the petition are true . . . ." N.C. Gen. Stat. § 7B-503(a). The plain language of the statute shows that a request for nonsecure custody must be made and a petition must be filed before the court may issue an order for nonsecure custody. N.C. Gen. Stat. § 7B-503.

As in *Ivey*, no request for nonsecure custody was presented in this case. In the preamble to the temporary custody order entered on 26 February 2004, the trial court stated, "[n]o juvenile petition has been filed and the only pending matter was the petition concerning non-interference." As the trial court noted, the only request or petition pending was the petition alleging obstruction of or interference with a juvenile investigation filed by DSS on 13 February 2004 seeking an order commanding respondent to cease interfering with DSS's investigation. At no time did DSS request nonsecure custody or file a petition alleging that K.C.G. was a neglected child.

As we stated in *Ivey*, "[w]ithout such petition, the trial court did not have the jurisdiction to order [K.C.G.'s father] to assume nonsecure custody" of K.C.G. and J.G. *Ivey*, 156 N.C. App. at 401, 576 S.E.2d at 389. The trial court's order of sole exclusive custody of K.C.G. and J.G. to their father is reversed.

### IV. Conclusion

The trial court possessed jurisdiction to issue the *ex parte* order to cease interference with DSS's investigation. That portion of the trial court's order is affirmed.

Without a filed petition alleging K.C.G. and J.G. to be neglected children, the trial court was without jurisdiction to place K.C.G. and J.G. solely and exclusively in the custody of their father. The trial

IN RE D.W.

[171 N.C. App. 496 (2005)]

court erred in assigning sole and exclusive nonsecure custody of K.C.G. and J.G. to their father. That portion of the trial court's order is reversed.

Because we find the trial court lacked jurisdiction to place K.C.G. in the custody of her father, we do not prematurely reach or decide the issues of whether the trial court abused its discretion in: (1) finding Dr. Brannon to be an expert in psychology and mental disorders due to lack of evidentiary foundation; and (2) concluding as a matter of law that the reports received by DSS, if true, would constitute neglect of the juvenile K.C.G. due to insufficiency of the evidence in the record.

Affirmed in Part, Reversed in Part, and Remanded.

Judges WYNN and ELMORE concur.