NO. COA13-843

NORTH CAROLINA COURT OF APPEALS

Filed: 3 June 2014

ALISA G. HENDERSON,
      Plaintiff,

      v.                              Wake County
                                      No. 13 CVD 1691
JASON JORDAN HENDERSON,
      Defendant.


Appeal by Defendant from Orders entered 8 February 2013 by

Judge Ned W. Mangum, 18 and 20 February 2013 by Judge Robert B.

Rader, and 18 April 2013 by Judge Margaret Eagles in Wake County

District Court. Heard in the Court of Appeals 22 January 2014.


    *Cranfill Sumner & Hartzog LLP, by M. Denisse Gonzalez, for
    Plaintiff.*

    *Edmundson & Burnette, L.L.P., by James T. Duckworth, III,
    for Defendant.*


    STEPHENS, Judge.


*Factual Background and Procedural History*

This case arises from the filing of a complaint for a

domestic violence protective order ("DVPO") by Plaintiff Alisa

G. Henderson. The complaint was filed on 8 February 2013 and

alleged that Plaintiff's former spouse, Defendant Jason Jordan

Henderson, intentionally caused bodily injury to the parties'

children, both girls, by frequently spooning with them in his underwear, grabbing their buttocks, placing cameras in their rooms while they were dressing, and beating them with belts, his hands, and a wooden spoon while other children were forced to watch. The complaint also asserted that Defendant placed the children in actual fear of imminent serious bodily injury by cursing at and threatening the children, allowing a friend to offer alcohol to one of the children, and becoming intoxicated to the point of falling over. Given these allegations, the trial court issued a temporary, *ex parte* DVPO on 8 February 2013. The *ex parte* DVPO was effective through 18 February 2013, and a hearing was set for the same date. Defendant received notice of the entering of the *ex parte* DVPO and the 18 February 2013 hearing. Therein, Defendant was informed that the purpose of the hearing was to determine "whether the [o]rder will be continued."

Evidence presented at the hearing tended to show that Plaintiff and Defendant are divorced with two daughters, Eliza and Anna.[1] At the time of the hearing, Eliza was fourteen and Anna was eleven. The parties shared joint custody of the children before the DVPO was issued. Both parties are now re-

---

[1] Pseudonyms are used for the protection of the juveniles.

married, and Defendant has two daughters from his current marriage.

According to a social worker at the Wake County Division of Social Services ("DSS"), DSS received a report on 8 February 2013 alleging a number of instances of misconduct by Defendant. At the time of the hearing, the allegations had not been substantiated. Nonetheless, DSS had implemented a safety plan for the children. The children would stay with Plaintiff and have no unsupervised contact with Defendant.

At the close of the hearing, the trial court found that "there have been acts that constitute domestic violence." Thus, the court entered a DVPO for a period of one year, ordering Defendant, *inter alia*, to abide by the DSS safety plan and refrain from any unsupervised contact with Eliza and Anna during that period. A written DVPO was filed the same day, memorializing the court's oral pronouncement. An amended DVPO was filed two days later, on 20 February 2013, providing that, as a law enforcement officer, Defendant may possess or use a firearm for official use.

On 15 March 2013, Defendant filed notice of appeal from the trial court's 8, 18, and 20 February 2013 orders. That same day, Defendant filed a motion to vacate or set aside the DVPO under

Rule 60(b) of the North Carolina Rules of Civil Procedure. The trial court denied Defendant's motion by order filed 28 March 2013. On 18 April 2013, the trial court filed a second, written order denying Defendant's motion to vacate. The court determined that it retained jurisdiction over Defendant's motion pursuant to Rule 60(b), despite the fact that Defendant had already filed his notice of appeal of the DVPO orders. The court concluded that Defendant was not entitled to relief pursuant to Rule 60(b)(4) or (6) because the DVPO was not void and because "Defendant was unable to show that any extraordinary circumstances exist or that justice demands for the DVPO to be vacated." Defendant also appealed from that order.

*Discussion*

On appeal, Defendant argues that the DVPO and amended DVPO are void because the trial court acted in excess of its jurisdiction. Therefore, Defendant asserts, the trial court erred in denying his Rule 60(b) motion to vacate. Alternatively, Defendant contends that the trial court's findings of fact are not supported by competent evidence and, thus, do not support its conclusion that Defendant committed acts of domestic violence against the children and put them in serious and immediate danger of injury. We affirm.

*I. Subject Matter Jurisdiction*

Defendant first argues that the trial court lacked subject matter jurisdiction to enter the DVPO because the court (1) failed to follow statutory procedure by not allowing Defendant 10 days following service of the summons and complaint to file an answer, and (2) held the DVPO hearing on the merits rather than for the purpose of simply continuing the *ex parte* order. We disagree.

"Where jurisdiction is statutory and the [l]egislature requires the [trial court] to exercise its jurisdiction in a certain manner, to follow a certain procedure, or otherwise subjects the [c]ourt to certain limitations, an act of the [c]ourt beyond these limits is in excess of its jurisdiction." *Eudy v. Eudy*, 288 N.C. 71, 75, 215 S.E.2d 782, 785 (1975). "Whether a trial court has subject[ ]matter jurisdiction is a question of law, reviewed *de novo* on appeal." *McKoy v. McKoy*, 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010) (italics added).

*(1) Time to File an Answer*

Section 50B-2 of the North Carolina General Statutes applies to the institution of civil actions, motions for emergency relief, temporary orders, and temporary custody in

domestic violence cases. N.C. Gen. Stat. § 50B-2 (2013). Relevant to this appeal, subsections (a) and (c) provide as follows:

(a) . . . Any action for a [DVPO] requires that a summons be issued and served. The summons issued pursuant to this Chapter shall require the defendant to answer within 10 days of the date of service. . . .

. . .

(c) *Ex Parte* Orders. —

. . .

(5) Upon the issuance of an *ex parte* order under this subsection, a hearing shall be held within 10 days from the date of issuance of the order or within seven days from the date of service of process on the other party, whichever occurs later. A continuance shall be limited to one extension of no more than 10 days unless all parties consent or good cause is shown. . . .

. . .

(7) Upon the issuance of an *ex parte* order under this subsection, if the party is proceeding *pro se*, the Clerk shall set a date for hearing and issue a notice of hearing within the time periods provided in this subsection[] and shall effect service of the summons, complaint, notice, order[,] and other papers through the appropriate law enforcement agency where the defendant is to be served.

N.C. Gen. Stat. § 50B-2 (italics added). Here, Defendant was served with his summons on 12 February 2013. On appeal, Defendant contends that the trial court violated subsection (a) and, therefore, exceeded its jurisdiction because he was required to appear for the hearing on 18 February 2013, depriving him of a full 10 days to file his answer. We disagree.

"[T]he Rules of Civil Procedure apply to actions under Chapter 50B, except to the extent that a differing procedure is prescribed by statute." *Hensey v. Hennessy*, 201 N.C. App. 56, 62, 685 S.E.2d 541, 546 (2009) (citation and internal quotation marks omitted). Relevant to this case, section 50B-2 sets forth specialized procedures to "deal with issuance of . . . *ex parte* DVPOs," which are distinct from those for issuing temporary restraining orders. *Id.* at 63, 685 S.E.2d at 546 (italics added). Instead, "[t]he procedures under [section] 50B-2 are intended to provide a method for trial court judges or magistrates to quickly provide protection from the risk of acts of domestic violence by means of a process which is readily accessible to *pro se* complainants." *Id.* at 63, 685 S.E.2d at 546–47. Moreover,

> in construing statutes[,] courts normally adopt an interpretation which will avoid absurd or bizarre consequences, the

> presumption being that the legislature acted in accordance with reason and common sense and did not intend untoward results. Accordingly, an unnecessary implication arising from one statutory section, inconsistent with the express terms of another on the same subject, yields to the expressed intent.

*Romulus v. Romulus*, 216 N.C. App. 28, 34, 715 S.E.2d 889, 893 (2011) (citation omitted). Similarly, the words in a statute "must be interpreted in context so as to render them harmonious with the intent and tenor of the entire statute and must be accorded the meaning which harmonizes with the other modifying provisions so as to give effect to the reason and purpose of the law." *Underwood v. Howland*, 274 N.C. 473, 479, 164 S.E.2d 2, 7 (1968).

Defendant's contention that he has the right to a period of 10 days in which to file his answer is inconsistent with subsection 50B-2(c), which explicitly pertains to "[e]*x* [p]*arte* [o]rders." N.C. Gen. Stat. § 50B-2(c) (italics added). Subsection (c)(5) states unequivocally that a hearing on an *ex parte* DVPO must be held "within 10 days" of the issuance of the DVPO or "within seven days" of the date of service of process, whichever is later. N.C. Gen Stat. § 50B-2(c)(5). Subsection (c)(7) clarifies that, when the complaining party is proceeding *pro se*, the clerk must set a hearing date "within the time

periods provided in this subsection." N.C. Gen. Stat. § 50B-2(c)(7). Accordingly, if service of process occurs even one day after the issuance of an *ex parte* DVPO, the subsequent hearing must occur *before* the 10-day period of time within which Defendant might otherwise be allowed to answer. To interpret subsection (a) according to Defendant's logic would strip subsections (c)(5) and (7) of any rational construction. We decline Defendant's invitation to do so.

As we noted in *Hensey*, the "fundamental nature and purpose of an *ex parte* DVPO" is that it must be "entered on relatively short notice in order to address a situation in which quick action is needed . . . to avert a threat of imminent harm." 201 N.C. App. at 63, 685 S.E.2d at 547. Similarly, the hearing on the *ex parte* DVPO must be conducted quickly in order to ensure that the rights of both parties, the complainant and the respondent, are not infringed. Subsection (c) encapsulates this principle by ensuring that both parties are able to present their positions to the trial court in a timely manner. To the extent that subsection (a) might otherwise suggest that the defendant has a longer period of time in which to answer,[2]

---

[2] We do not hold that subsection (a) gives a defendant in a section 50B case the absolute right to a full 10 days in which

subsection (c) supersedes it by mandating the time limits for the court to conduct the hearing after the issuance of an *ex parte* DVPO. *See* N.C. Gen. Stat. § 50B-2. In the circumstance in which, as here, the hearing on the *ex parte* DVPO must be held before the expiration of 10 days after service of process on the defendant, the defendant is required to answer, if at all, within the period of time leading up to the hearing as prescribed by subsection (c)(5).

Here, the *ex parte* DVPO was issued on 8 February 2013, and Defendant was served with a summons and notice of the hearing on 12 February 2013. Pursuant to section 50B-2(c), the hearing was set to occur within seven days of the date of service of process and within 10 days of the date of the issuance of the order, on 18 February 2013. Following service of process, Defendant had at least five days in which to submit a formal, written answer. At the hearing, Defendant had the opportunity to further respond to Plaintiff's allegations. He was permitted to appear and testify despite the fact that he had not filed an answer. This comports with section 50B-2. Accordingly, Defendant's argument is overruled.

---

to file an answer. On the contrary, we conclude that the statute gives him *no more than* 10 days to answer.

*(2) The Purpose of the DVPO Hearing*

Defendant also argues that the trial court exceeded its jurisdiction by holding a hearing on whether to issue a DVPO. Specifically, Defendant asserts that this hearing was not held in accordance with the notice he received, which stated that the purpose of the hearing was to determine whether the *ex parte* order should be continued. Citing case law which prohibits the court from entering a permanent injunction during a hearing on a temporary restraining order ("TRO"), Defendant contends that the "express, unambiguous language" of the notice informed him that "the hearing is *not* to decide the claim on the merits; rather the hearing's function is to determine whether the *ex parte* order should be continued in effect until a *future* hearing, when [the] plaintiff's claims . . . would be decided." (Certain italics added). We disagree.

As discussed in *Hensey*, the procedures for *ex parte* DVPOs are distinct from the procedures for TROs. 201 N.C. App. at 63, 685 S.E.2d at 546. Defendant's attempt to liken this case to one involving a TRO or a permanent injunction is misplaced. The process of issuing an *ex parte* DVPO is completed once the trial court determines that the complainant, alone, has alleged sufficient facts to show a "danger of acts of domestic

violence." *See id.* at 65, 685 S.E.2d at 548. It is nonsensical to suggest that a hearing involving both parties could possibly be for the purpose of continuing an *ex parte* DVPO. In accordance with the term "*ex parte*,"[3] such orders are not intended to be issued with input from both sides. Therefore, a hearing to determine whether to continue the trial court's order, notice of which must be given to the opposing party, cannot be a hearing on whether to continue the *ex parte* DVPO. Instead, it must be a hearing to determine whether the trial court's protective order should be continued beyond the temporary time frame of the *ex parte* DVPO.

Defendant's argument that the trial court lacked jurisdiction to enter the 18 February 2013 order and 20 February 2013 amended order is overruled. The trial court did not exceed its jurisdiction in entering those orders. Accordingly, Defendant's argument that the trial court erred in denying his

---

[3] "*Ex parte*" means "[d]one or made at the instance and for the benefit of *one party only*, and *without notice to*, or argument by, *any person adversely interested*; of or relating to court action taken by one party without notice to the other, usu[ally] for temporary or emergency relief[.]" Black's Law Dictionary 657 (9th ed. 2009) (emphasis added).

Rule 60(b) motion to vacate the DVPO for lack of jurisdiction is also overruled.[4]

*II. The Trial Court's Findings and Conclusions*

Alternatively, Defendant asserts that the trial court's 18 February 2013 DVPO and 20 February 2013 amended DVPO must be reversed because certain of the court's findings of fact are not based on competent evidence and, without those findings, the trial court's conclusions of law are improper. Again, we disagree.

"The standard of review on appeal from a judgment entered after a non-jury trial is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment." *Cartin v. Harrison*, 151 N.C. App. 697, 699, 567 S.E.2d 174, 176 (citation and internal quotation marks omitted), *disc. review denied*, 356 N.C. 434, 572 S.E.2d 428 (2002). The trial court made the following relevant findings of fact in the challenged orders:

> 3. On . . . Jan. 5, 2013, . . . [D]efendant

---

[4] Defendant's argument that the trial court erred by denying his Rule 60(b) motion to vacate is based entirely on his argument that the trial court lacked jurisdiction to enter the 18 and 20 February 2013 orders.

a. attempted to cause . . . bodily injury to . . . [the children;]

b. placed in fear of imminent serious bodily injury . . . a member of the plaintiff's family[;]

. . .

d. committed an act defined by [N.C. Gen. Stat. §] 14-[27.5A (sexual battery)] against the [children] by BECOMING EXTREMELY INTOXICATED WHILE CARING FOR THE CHILDREN AND ENGAGED IN INAPPROPRIATE CONTACT, CHILDREN DISCLOSED PRIOR INCIDENTS OF PHYSICAL AND VERBAL ABUSE INCLUDING HITTING W/A BELT AND THREATENING TO KNOCK THEIR TEETH DOWN THEIR THROAT. ALSO, [DEFENDANT] INAPPROPRIATELY SQUEEZED BUTTOCKS OF MINOR DAUGHTER. CONDUCT HAS RESULTED IN EMOTIONAL HARM TO CHILDREN RESULTING IN THREATS OF SELF[-]HARM.

Based upon those findings, the court concluded that:

2. . . . [D]efendant has committed acts of domestic violence against the minor child(ren) residing with or in the custody of . . . [P]laintiff.

3. There is a danger of serious and immediate injury to the minor child(ren). . . .

Defendant argues that findings 3(a), 3(b), and 3(d) are not supported by the evidence because they are based on statements made by the children to Plaintiff and the children's psychiatrist in the context of an *ongoing* DSS investigation. For support, Defendant cites *Burress v. Burress*, where we stated

that the "results" of a DSS investigation might be relevant to the issue of domestic violence, but the mere existence of the investigation is not. 195 N.C. App. 447, 450, 672 S.E.2d 732, 734 (2009). Defendant contends that, as in *Burress*, the evidence concerning the children's allegations is irrelevant because it stems from "reports of abuse," not the "results" of a DSS investigation. Defendant also asserts that Plaintiff's testimony is not competent because it did not reference specific dates of the acts at issue. We are unpersuaded.

Plaintiff offered the following pertinent testimony at trial:

> [PLAINTIFF]: [Eliza] went to her . . . psychiatrist appointment and told of drunken episodes that happened in the house in which there were seven children in the house; two of which were my children.
>
> And . . . [Defendant] and a friend offered my daughter alcohol. She did not drink it, but it ended up with the one man passed out on the floor; my ex-husband in a drunken stupor.
>
> [My daughter] asked him, "What do I look like to you?" And he said, "You look like [a] n-i-g-g-e-r." And then spilled alcohol on the floor; made [Eliza] clean it up: "Clean this s-h-i-t up." . . .
>
> . . .
>
> [My daughters] have actually exhibited self-harm such as cutting themselves because

. . . the discipline of [Defendant] is so strict and strong that when he disciplines them, they express wanting to kill themselves and cutting themselves.

. . .

JUDGE . . . : All right. So this incident that you spoke of when they were — when he was intoxicated —

[PLAINTIFF]: Yes, sir.

JUDGE . . . : — and had another man in the house, when was this?

[PLAINTIFF]: It was January 5th. But there's been ongoing over-the-top abuse: spankings with belts, one much — the younger child was made to stand there and — in front — he had all three children sit down on the couch[] and said, "This is what happens when you forget your agenda at school." And spanked her with a belt in front of all three children.

He curses at . . . them. He yells at them. He screams at them. . . .

JUDGE . . . : All right. Now, as I understand it, there were more allegations than what you've just told me in your —

[PLAINTIFF]: Yes, sir. Yes, sir. There is the spooning incident that happened with [Eliza]. [Defendant] spooned with her in his underwear. . . .

JUDGE . . . : When was that?

[PLAINTIFF]: [Eliza] said that he does it very often. I don't have a date.

JUDGE . . . : And then was there some —

you've also alleged some inappropriate contact?

[PLAINTIFF]: Yes. He slaps her on the bottom and squeezes her bottom, which I feel, obviously, very inappropriate for a 14[-]year[-]old or even 11[-]year[-]old girls.

JUDGE . . . : All right. And you said there were threats of violence or extensive violence? Was it — physical violence?

[PLAINTIFF]: Yes. [Defendant] threatens, "If — if you tell what happens in my home — if you tell family business or tell daddy/daughter secrets," he said in the past, "I will knock your teeth down your throat."

JUDGE . . . : And what's the most recent time that that has happened?

[PLAINTIFF]: I don't know. I know that it happens quite often. My youngest actually has told myself and the DSS worker that when she — every time she sees a belt, she has flashbacks, and she gets afraid.

She says she has nightmares every night and headaches quite often, and she's very [emotionally] scarred.

. . .

[Regarding the intoxication incident, Eliza] was very afraid, and she asked the friend, "Do I need to call an ambulance for you? What do I need to do?" 'Cause he was laying on the floor, talking out of his mind. [Defendant] started speaking Spanish. He doesn't speak Spanish. This is according to my daughter.

> And so, [Eliza] had to be responsible, while these men were intoxicated, for all [seven] children [who were in the house at the time].
>
> . . .
>
> . . . May I say something else?
>
> JUDGE . . . : Sure.
>
> [PLAINTIFF]: Okay. After [Eliza] told the psychiatrist about the incident, she said — and she knew that she was going to make the DSS report. She said, "Do I have to go back to Dad's?" She said, "Cause if I do, he's going to hurt me."
>
> Several times she has busted out into tears because of fear of her father.

Testifying for himself, Defendant admitted becoming intoxicated, getting sick, and throwing up while supervising the children on January 5th, but asserted that he still "kn[ew] what was going on around the house[.]" Defendant also admitted to cursing in front of the children, yelling at them, and, approximately four years before the hearing, spanking one of the children with a belt until she began to make retching sounds.

Defendant's admissions and Plaintiff's testimony constitute competent evidence to justify the trial court's findings of fact. Plaintiff testified to multiple circumstances in which Defendant vigorously spanked the children, and Defendant admitted to hitting one daughter until she made retching sounds.

Plaintiff testified that Defendant threatened the children, spooned with them, and squeezed their buttocks. According to Plaintiff, this distressed the children, causing them to exhibit self-harm and express an interest in suicide. Plaintiff testified that Anna has nightmares every night, headaches on a regular basis, and is now emotionally scarred. Plaintiff also testified to an incident in which Defendant became intoxicated, which Defendant admitted. On that occasion, according to Plaintiff, Defendant was unable to stand or supervise the children and began babbling in Spanish.

It does not matter that certain of these allegations were also made in the context of DSS's investigation. In *Burress*, we found irrelevant the plaintiff's testimony that "[DSS] was investigating allegations of sexual abuse against the plaintiff's minor children by [the] defendant" because the mere existence of a DSS investigation does not mean that domestic violence has occurred. *Id.* at 450, 672 S.E.2d at 734. As no evidence was presented in that case regarding what was revealed by the investigation, however, we did not have the opportunity to address whether statements made in the context of a DSS investigation would also be irrelevant. *See id.* We hold that they are not. To hold otherwise would create a conflict of

interest in which the plaintiff in a domestic violence case is incentivized to decline sharing information with DSS for fear of having her testimony stricken at a subsequent DVPO hearing. We decline to reach such a result here. Plaintiff testified to statements made to her by her children about what they experienced with Defendant.[5] In addition, Plaintiff described her personal observations of the adverse effects Defendant's actions have had on her daughters' behavior and emotional health. The fact that some of the children's statements were also made to DSS does not render the rest of Plaintiff's testimony irrelevant and incompetent. Accordingly, Defendant's argument is overruled.

Moreover, Plaintiff's inability to provide specific dates with regard to certain of the incidents, which were largely

---

[5] Defendant does not argue that Plaintiff's testimony about statements her daughters made directly to her is incompetent as inadmissible hearsay. In addition, Defendant did not make any objection on those grounds at the hearing. Therefore, any such objection is waived, and Plaintiff's testimony is not incompetent in that respect. *See In re Ivey*, 156 N.C. App. 398, 403, 576 S.E.2d 386, 390 (2003) (holding that the respondent-parents waived their argument that certain testimony constituted inadmissible hearsay because they failed to object to the testimony at the permanency planning hearing); *see also In re F.G.J.*, 200 N.C. App. 681, 693, 684 S.E.2d 745, 753 (2009) (commenting that "no objection on hearsay grounds was made by either parent [at the termination of parental rights hearing]. Therefore, any objection has been waived, and the testimony must be considered competent evidence.") (citation omitted); N.C.R. App. P. 10(a)(1).

described to her by her children, is not fatal. *See State v. Wood*, 311 N.C. 739, 742, 319 S.E.2d 247, 249 (1984) ("We have stated repeatedly that in the interests of justice and recognizing that young children cannot be expected to be exact regarding times and dates, a child's uncertainty as to time or date upon which the offense charged was committed goes to the weight rather than the admissibility of the evidence."). Therefore, we hold that the trial court's findings of fact in the 18 February 2013 and 20 February 2013 orders are based on competent evidence and, in turn, fully support its conclusions of law. Accordingly, Defendant's alternative argument is overruled. The orders appealed from are

AFFIRMED.

Judges STEELMAN and DAVIS concur.