IN THE MATTER OF: S.J.M.

No. COA06-822

(Filed 19 June 2007)

**1. Appeal and Error— amendment of record on appeal— summons**

The trial court did not err in a permanency planning/review hearing by concluding it had subject matter jurisdiction over the matter even though respondent mother contends a summons was never issued as to either respondent, because: (1) while the original record on appeal contained no summons in this matter, on 8 September 2006 DSS filed a motion to amend the record on appeal to include a copy of the summons along with an affidavit from the clerk of court asserting to the fact that the deputy clerk of Lee County had issued the summons on 21 June 2005, thus satisfying N.C. R. App. P. 9(b)(3); (2) the Court of Appeals granted DSS's motion to amend the record on appeal, thus reflecting that a summons was in fact issued; and (3) by participating in substantive matters in this case, respondent parents waived any objection to lack of service of process.

**IN RE S.J.M.**

[184 N.C. App. 42 (2007)]

**2. Child Abuse and Neglect— order ceasing reunification— mental evaluation of sibling—consideration of doctor's opinions**

The trial court in a permanency planning hearing properly considered a doctor's opinions stated in a mental health evaluation of a sibling of the minor child when determining whether to cease reunification efforts with respondent mother where no objection was made to the trial court's consideration of the doctor's report or to the social worker's report which referenced the doctor's report, and the trial court had received the doctor's report into evidence without objection at the disposition hearing.

**3. Child Abuse and Neglect— order ceasing reunification— failure to comply with Case Plan—supporting evidence**

Competent evidence supported the trial court's finding in a permanency planning order that respondent mother had not complied with the Family Service Case Plan where the evidence showed that, although respondent mother did complete her parenting classes as required, it also showed that she did not make progress toward reunification because she struggled with appropriately recognizing the minor child's basic needs.

**4. Child Abuse and Neglect— order ceasing reunification— mother's inability to safely parent the child—supporting evidence**

Competent evidence supported the trial court's findings in a permanency planning order that the mother had not demonstrated an ability to safely parent the child and that the child is exposed to a substantial risk of physical injury or abuse because the mother is unable to provide adequate supervision or protection where the evidence showed that the mother had difficulty making a budget or schedule; the mother had difficulty interacting with the child; the mother would usually feed the child as a response to any complaint by the child; and the mother would not listen to the foster mother's suggestions to pick up the child, talk to the child, or try to amuse him with toys when faced with such complaints from the child.

**5. Child Abuse and Neglect— order ceasing reunification— absence of family member assistance—supporting evidence**

Competent evidence supported the trial court's finding in a permanency planning order that there were no family members

**IN RE S.J.M.**

[184 N.C. App. 42 (2007)]

identified by the parents who could give more than cursory assistance in parenting their child where the maternal grandparents did not feel they could provide for another child, the paternal grandmother was unsure if she would be able to take care of the child, and DSS was unable to identify any other relatives as possible resources for the parents.

**6. Child Abuse and Neglect— permanency planning hearing— possibility of child returning home within six months— extension of time not required**

In determining in a permanency planning hearing whether it would be possible for the minor child to be returned home within the next six months, the trial court was not required to extend the time to eight months after the hearing in order to allow the completion of a contract with an in-home reunification service which had been working with the parents.

**7. Child Abuse and Neglect— order ceasing reunification— gradual reduction of visitation**

In order to facilitate permanency and proceed to adoption in accordance with the trial court's decision changing the plan from reunification to adoption, the trial court may gradually reduce visitation so that there is no abrupt stop.

**8. Child Abuse and Neglect— permanency planning order— incorporation of DSS and guardian ad litem reports—harmless error**

The trial court's improper incorporation of a DSS court report and the guardian ad litem's report as additional findings of fact in a permanency planning order was harmless error in light of the trial court's other findings of fact that were sufficient to support the court's conclusion of law.

**9. Child Abuse and Neglect— further reunification efforts futile—possibility of returning home within reasonable time**

The trial court did not err by concluding in a permanency planning order that further reunification efforts were futile because DSS presented evidence showing that it was not possible for the minor child to be returned home within a reasonable period of time.

IN RE S.J.M.

[184 N.C. App. 42 (2007)]

**10. Child Abuse and Neglect— permanency planning order— failure to comply with Family Service Case Plan—supporting evidence**

Competent evidence supported the trial court's findings in a permanency planning order that respondent father failed to comply with the Family Service Case Plan, even though the Plan was not introduced into evidence, where the DSS court report outlined requirements from the Family Service Case Plan, and there was evidence that respondent father failed to meet the two major requirements of attending parenting classes and attending mental health appointments.

**11. Child Abuse and Neglect— order ceasing reunification— father's inability to parent child—risk of injury or abuse— supporting evidence**

Competent evidence supported the trial court's findings in a permanency planning order that respondent father has not demonstrated an ability to safely parent the child and that the child is exposed to a substantial risk of physical injury or abuse because the father is unable to provide adequate supervision or protection where there was evidence that the parents were unable to care for the child without assistance, that the parents had difficulty in making a budget and schedule, and that the father did not complete his parenting classes or keep his mental health appointments as required by a Family Service Case Plan for reunification.

**12. Child Abuse and Neglect— permanency planning order— DSS court report—guardian ad litem report**

The trial court could properly consider the DSS court report and guardian ad litem report in determining whether to change the permanent plan from reunification to adoption because the court may properly consider all written reports and materials submitted in connection with the proceeding.

**13. Child Abuse and Neglect— order ceasing reunification— possibility of child returning home within six months— child's best interest—supporting evidence**

Competent evidence supported the trial court's findings in a permanency planning order changing the plan from reunification to adoption that it was not possible for the child to be returned home immediately or within the next six months and that it was not in the child's best interest to return home because of the cog-

IN RE S.J.M.

[184 N.C. App. 42 (2007)]

nitive limitations of the parents where there was evidence that respondent father had made only limited progress, that the father had failed to complete his parenting classes and had failed to keep his mental health appointments, and that a contractor for an in-home reunification service who was working with the parents could not definitely state that the child might be able to be returned to the home within the next six months.

Judge WYNN dissenting.

Appeal by respondent-mother and respondent-father from an order entered 10 January 2006 *nunc pro tunc* 22 November 2005 by Judge George R. Murphy in Lee County District Court. Heard in the Court of Appeals 9 January 2007.

*Beverly D. Basden for petitioner-appellee Lee County Department of Social Services.*

*Elizabeth Myrick Boone for appellee Guardian ad Litem.*

*Katharine Chester for respondent-appellant mother.*

*Susan J. Hall for respondent-appellant father.*

HUNTER, Judge.

This appeal arises out of the trial court's order ceasing reunification with respondents, mother and father, and their minor child, S.J.M. Because the record shows that there was competent evidence to support the trial court's order, we affirm.

The underlying facts show that on 20 June 2005, Lee County Department of Social Services ("DSS") filed a juvenile petition alleging that respondent-mother and respondent-father (together, "respondents") neglected their child and the child was dependent. The trial court placed the child in the protective custody of DSS, adjudicated the child dependent, and ordered respondents to work with DSS, Naven's Nest (an intensive in-home reunification service), and the foster parent. On 22 November 2005, at the Permanency Planning/Review hearing, the trial court ordered the cessation of reunification efforts and changed the plan from reunification to adoption.[1] Respondents appeal.

---

1. The minor child's two siblings were previously removed from the home, one due to physical abuse and the other due to mother's incarceration. Both children are in adoptive placements.

**IN RE S.J.M.**

[184 N.C. App. 42 (2007)]

Both respondents argue that the trial court erred in changing the permanent plan from reunification to adoption because there were insufficient findings of fact to support its conclusions of law that reunification efforts should cease and for a permanent plan of adoption. Respondent-mother further argues that the trial court lacked subject matter jurisdiction over this matter.

"Appellate review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings and the findings support the conclusions of law." *In re J.C.S.*, 164 N.C. App. 96, 106, 595 S.E.2d 155, 161 (2004). This Court is "bound by the trial court['s] findings of fact where there is some evidence to support those findings, even though the evidence might sustain findings to the contrary." *In re Montgomery*, 311 N.C. 101, 110-11, 316 S.E.2d 246, 252-53 (1984); N.C. Gen. Stat. § 1A-1, Rule 52 (2005). The trial court is required to make written findings on all of the relevant criteria detailed by N.C. Gen. Stat. § 7B-907(b) (2005):

> (b) . . . At the conclusion of the hearing, if the juvenile is not returned home, the court shall consider the following criteria and make written findings regarding those that are relevant:
>
> (1) Whether it is possible for the juvenile to be returned home immediately or within the next six months, and if not, why it is not in the juvenile's best interests to return home;
>
> (2) Where the juvenile's return home is unlikely within six months, whether legal guardianship or custody with a relative or some other suitable person should be established, and if so, the rights and responsibilities which should remain with the parents;
>
> (3) Where the juvenile's return home is unlikely within six months, whether adoption should be pursued and if so, any barriers to the juvenile's adoption;
>
> (4) Where the juvenile's return home is unlikely within six months, whether the juvenile should remain in the current placement or be placed in another permanent living arrangement and why;
>
> (5) Whether the county department of social services has since the initial permanency plan hearing made reason-

**IN RE S.J.M.**

[184 N.C. App. 42 (2007)]

able efforts to implement the permanent plan for the juvenile;

(6)  Any other criteria the court deems necessary.

*Id.*

"In a nonjury trial, it is the duty of the trial judge to consider and weigh all of the competent evidence, and to determine the credibility of the witnesses and the weight to be given their testimony." *In re Gleisner*, 141 N.C. App. 475, 480, 539 S.E.2d 362, 365 (2000).

I.A.

**[1]** Respondent-mother first argues that a summons was never issued as to either respondent, and as such, the trial court did not have subject matter jurisdiction over this matter. While it is true that the original record on appeal contains no summons in this matter, on 8 September 2006 DSS filed a motion to amend the record on appeal to include a copy of the summons along with an affidavit from Denise Whitaker, Deputy Clerk of Superior Court of Lee County, attesting to the fact that she had issued the summons on 21 June 2005, the date on the face of the summons. The summons is addressed to each of the parents at their address in Sanford, North Carolina, lists the names and phone numbers of the lawyers temporarily assigned to represent them, and advises them of a hearing on 24 June 2005 at 10:00 a.m. at the Lee County Courthouse. We hereby grant DSS's motion to amend the record on appeal and, thus, the record shows that a summons was in fact issued on 21 June 2005. We therefore dismiss this assignment of error.

The dissent correctly notes that in our opinion in *In re Mitchell*, 126 N.C. App. 432, 485 S.E.2d 623 (1997), on very similar facts, we held that because no summons had been issued we did not have jurisdiction—personal or subject matter—over the persons involved. *Id.* at 433, 485 S.E.2d at 624. However, because we grant the motion to amend the record to include the summons, the record now reflects that a summons *was* in fact issued, and thus *Mitchell* is not controlling on this point.

The summons does not show that it was served on either parent. However, service of process may be waived by appearance and participation in the legal proceeding without raising an objection to the lack of service. N.C. Gen. Stat. § 1A-1, Rule 12(h) (2005); *see also In re D.R.S.*, 181 N.C. App. 136, 139, 638 S.E.2d 626, 628 (2007);

*In re Howell,* 161 N.C. App. 650, 655, 589 S.E.2d 157, 160 (2003). The record in this case shows that a hearing was held on 24 June 2005, at which the parents were not present. The matter was before the trial court on 29 June 2005 with the parents, their respective counsel, and their guardians *ad litem* present. This matter was continued on 19 July 2005 and again on 9 August 2005. On 23 August 2005, a disposition hearing was held before Judge Murphy, again with both parents, their respective counsel, and their guardians *ad litem* present. Finally, on 22 November 2005, a permanency planning hearing was held before Judge Murphy, with both parents' respective counsel and their guardians *ad litem* present. The record is devoid of any assertion of lack of service. By thus participating in substantive matters in this case, the parents waived any objection to lack of service of process.

The dissent is again correct that this argument applies only to personal jurisdiction, that subject matter jurisdiction must also be obtained before this Court can properly hear an appeal, and that subject matter jurisdiction cannot be obtained simply by the appearance of parties before us. However, because we grant the motion to amend, the record now includes not only the summons but an affidavit from the clerk of court stating the date on which the summons was issued. The dissent is correct that Rule 9(b)(3) of our Rules of Appellate Procedure requires that "[e]very . . . paper included in the record on appeal shall show the date on which it was filed[.]" N.C.R. App. P. 9(b)(3). The Rule does not specifically require a date stamp on each paper. Our granting of the motion means that the record now contains a copy of a validly issued summons and an affidavit from an officer of the court as to the date it was issued, which, in this case, we believe constitutes proof to satisfy Rule 9's requirements. As such, subject matter jurisdiction has been validly obtained.

I.B.

Respondent-mother further argues that there was insufficient evidence to support the trial court's findings of fact nos. 3, 5, 6, 8, 10, 14, 15, 16, 17, 18, 22, 24, 25, and 29. We disagree.

Respondent-mother states that findings of fact nos. 3, 5, 6, and 18 taken together explain the trial court's justification in ceasing reunification efforts:

3. A [child mental health evaluation (CMHE)] was prepared on the older sibling, J.W. by Dr. [Robert] Aiello and he tested both

**IN RE S.J.M.**

[184 N.C. App. 42 (2007)]

parents as to their IQ's. As a result of these tests, both parents were assigned [guardians *ad litem*] in this action.

. . .

5. The Department of Social Services was precluded, because of the findings in the prior cases from making reasonable efforts to prevent and/or eliminate the need for the juvenile's placement.

6. Because of the abuse to J.W., termination in A.M.'s case and the results of the CMHE, S.M. would be in an environment injurious to his health if returned to the parents. The parents' limited ability to parent precludes returning the juvenile to the home safely.

. . .

18. Both parents, in Dr. Aiello's opinion, would require significant support in order to have the juvenile live with them. There was no one in the family willing to provide the level of support required. Naven's Nest is limited in the time period they can work with the family. They are only available to the parents 3½ to 5 hours per week. They have seen some improvement but the parents still have no phone. In addition she has talked with them about court and does not know why they are not present in court today.

Respondent-mother takes issue with the reliance on Dr. Aiello's evaluation and his opinion in these findings. Specifically, respondent-mother argues that the CMHE referred to in finding of fact no. 3 was not received into evidence, nor did Dr. Aiello testify at the hearing. She also argues that the CMHE was inapplicable to this hearing both because it was conducted on behalf of her other child, already removed from her custody, and because it was done prior to Naven's Nest working with the family.

[2] However, the record reveals no objection to the trial court's consideration of Dr. Aiello's report or the social worker's report which referenced Dr. Aiello's report. Furthermore, the trial court received Dr. Aiello's report[2] into evidence, without objection, at the disposition hearing on 23 August 2005. Thus, the trial court properly considered Dr. Aiello's opinions when determining whether to cease reunification efforts with respondent-mother. *See In re Ivey*, 156

2. We note that Dr. Aiello's report was not included in the record on appeal.

N.C. App. 398, 402, 576 S.E.2d 386, 390 (2003) (providing that " '[i]n juvenile proceedings, trial courts may properly consider all written reports and materials submitted in connection with said proceedings' " (quoting *In re Shue*, 63 N.C. App. 76, 79, 303 S.E.2d 636, 638 (1983)).

[3] With regards to finding of fact no. 10, respondent-mother argues there is no evidence to support the trial court's finding that both respondents "have not complied with the Family Services Case Plan" and that respondent-mother "does not request additional visitation with the juvenile."[3] We disagree.

The record shows that the Family Services Case Plan required respondent-mother to work with Naven's Nest and the foster parent to create a household budget and a system of consistently meeting financial obligations in a timely manner; to get transportation to various appointments; to secure a home telephone; and to devise a method to aid respondents in scheduling and keeping regular appointments as required. Moreover, it is apparent from the DSS court report that respondent-mother was to complete a parenting class.

Although a DSS report reveals that respondent-mother did complete her parenting classes as required, it also shows that she did not make progress towards the goal of reunification because she struggled with appropriately recognizing the minor child's basic needs. Specifically, the evidence showed that respondent-mother (1) had difficulty interacting with the child; (2) would usually feed the child as a response to any complaint on his part, even when informed that the child had already eaten; and (3) would not listen to the foster mother's suggestions to pick up the child, talk to the child, or try to amuse him with toys in response to such complaints. While respondent-mother is correct that evidence contrary to this finding exists in the record, this Court as stated above is bound by the trial court's findings of fact where evidence exists to support them. The record contains such evidence for finding of fact no. 10, and as such we find that the trial court did not err as to it.

[4] As to findings of fact nos. 14 and 17, which state that "[t]he parents have not demonstrated an ability to safely parent this child" and

---

3. A careful review of the record reveals that the Family Service Plan itself was apparently not admitted into evidence and was not included in the record on appeal. However, the record also reveals that respondent-mother made no objection to the trial court considering any reference to the Family Service Plan. Moreover, respondent-mother failed to make any such argument on appeal, and as such we decline to address this issue.

IN RE S.J.M.

[184 N.C. App. 42 (2007)]

that the child "is exposed to a substantial risk of physical injury or abuse because the parent is unable to provide adequate supervision or protection[,]" respondent-mother argues that the evidence supports a contrary finding. We disagree.

The evidence showed: (1) The Naven's Nest worker witnessed respondent-mother acting appropriately with the child, but could not state that respondents would be able to care for the baby without help;[4] (2) respondents had difficulties in making a budget and schedule and, once the minor child is in the home, these difficulties would be amplified; (3) respondents were not ready to take the minor child home immediately; (4) respondent-mother had difficulty interacting with the child; (5) respondent-mother would usually feed the child as a response to any complaint on his part; and (6) respondent-mother would not listen or take the foster mother's suggestions to pick up the child, talk to the child, or try to amuse him with toys when faced with such complaints from the child.

Cumulatively, this evidence shows a pattern of respondents being unable to consistently care for the child's needs in the future when unsupervised. In particular, respondent-mother's inability or simple unconcern as to what the child actually needed when it complained—food, attention, etc.—might well have concerned the trial court. Based on this evidence, we find that the trial court had competent evidence to support these findings and therefore overrule respondent-mother's assignments of error as to them.

[5] With regards to finding of fact no. 15, which provides "[t]here were no family members identified by the parents who could give more than cursory assistance in their trying to parent their child[,]" respondent-mother argues that evidence showed that she had support from relatives and her church family, and therefore she had more than "cursory assistance." We disagree.

Respondent-mother contends that the evidence showed that she had the support of members of their church and families in addition to the workers from Naven's Nest. However, aside from the bare assertion of this fact from a Naven's Nest report, the record reflects no evidence—presented by respondent-mother or otherwise—as to what type of support (how often, in what capacity, etc.) was being provided.

---

4. This statement comes from finding of fact no. 11, to which respondent-mother failed to assign error; it is therefore binding on this Court. *See Montgomery*, 311 N.C. at 110-11, 316 S.E.2d at 252-53.

The record does reflect evidence by DSS that it approached respondents' family members about taking care of the minor child. The maternal grandparents "did not feel they could provide for another child" and although the paternal grandmother expressed interest in taking care of the child, she was unsure if she would be able to do so. DSS was unable to identify any other relatives as possible resources for this family. The record thus reflects competent evidence on which this finding of fact was based, and as such, this assignment of error is overruled.

**[6]** As to finding of fact no. 29, which provides "[i]t is not possible for the juvenile to be returned home immediately or within the next six (6) months and it is not in the juvenile's best interest to return home because of the cognitive limitations of the parents[,]" respondent-mother argues that reunification was possible if Naven's Nest was allowed to complete their contract with the family. This argument is without merit.

At the hearing on 22 November 2005, Renee Hannah, a contractor for Naven's Nest, testified that Naven's Nest's involvement with the family began in July 2005 and was scheduled to continue through July 2006, eight months after the hearing. The record shows reports regarding respondents from Ms. Hannah dated 15 August, 15 October, and 15 November 2005; Ms. Hannah testified that during that time progress had been made, and that she would like more time to work with respondents.

Per statute, if a child is not able to return home immediately, the trial court must consider certain issues, including "[w]hether it is possible for the juvenile to be returned home *immediately or within the next six months*, and if not, why it is not in the juvenile's best interests to return home[.]" N.C. Gen. Stat. § 7B-907(b)(1) (emphasis added).

Here, the trial court was required to consider whether S.J.M. could be returned to respondents within the *next six months*. Respondent-mother urges this Court to consider the potential improvement that might be shown at the end of the Naven's Nest contract, which would not be complete for eight months. However, the trial court was not required to consider whether the minor child could be returned beyond the statutory time period of six months. Respondent-mother's contention that the trial court should have allowed completion of the Naven's Nest contract is implicitly based

on an assumption that S.J.M. could with certainty be returned to her at that point, but even Ms. Hannah was not able to testify that respondents would be able to take custody of S.J.M. following the end of her involvement. Based on the record and testimony from the hearing, the trial court had competent evidence on which to base this finding of fact.

[7] As to finding of fact no. 22, respondent-mother argues that there is nothing in the record to indicate that the reduction in visitation was in the best interest of the minor child. We disagree.

Here, respondent-mother failed to assign error to finding of fact no. 21, which provides that "[t]his child needs permanency. It is recommended that reunification efforts cease and the plan be changed from reunification to adoption by the [current foster family] with a concurrent plan of adoption by another approved family." Because respondent-mother failed to challenge this assignment of error, it is binding on this Court. *See Montgomery*, 311 N.C. at 110-11, 316 S.E.2d at 252-53. In order to facilitate permanency and proceed to adoption, which is stated to be in the child's interest per finding of fact no. 21, the trial court may decide to gradually reduce visitation so that there is no abrupt stop. The trial court properly reduced the visitation based on the best interest of the minor child.

[8] Finally, as to finding of fact no. 24, respondent-mother argues that the trial court incorporated the DSS court report and guardian *ad litem's* report as additional findings of fact in an improperly broad fashion. This argument is without merit. Although the trial court is not permitted to broadly incorporate outside sources as a substitute for making its own findings of fact, the trial court is allowed to consider these documents when making its decision. *See Ivey*, 156 N.C. App. at 402, 576 S.E.2d at 390; *In re J.S.*, 165 N.C. App. 509, 511, 598 S.E.2d 658, 660 (2004) (providing that the trial court should not "broadly incorporate" guardian *ad litem* and social worker's reports, but may consider the reports when making its findings). Notwithstanding the trial court's improper incorporation of the reports as additional findings of fact, it made other findings of fact that were sufficient to support its conclusion of law. Thus, the trial court's incorporation of the DSS court report and guardian *ad litem's* report was harmless error.

[9] Respondent-mother last argues the trial court erred in concluding further reunification efforts were futile. We disagree.

**IN RE S.J.M.**

[184 N.C. App. 42 (2007)]

The purpose of a permanency planning hearing is "to develop a plan to achieve a safe, permanent home for the juvenile within a reasonable period of time." N.C. Gen. Stat. § 7B-907(a). "In a permanency planning hearing held pursuant to Chapter 7B, the trial court can only order the cessation of reunification efforts when it finds facts based upon credible evidence presented at the hearing that support its conclusion of law to cease reunification efforts." *In re Weiler*, 158 N.C. App. 473, 477, 581 S.E.2d 134, 137 (2003).

Here, we have held that there was competent evidence presented at the hearing to support the trial court's findings of fact. DSS presented evidence showing that it was not possible for the minor child to be returned home within a reasonable period of time. Thus, based on those findings, the trial court properly concluded that:

1. It is in the child's best interest for the permanent plan to be adoption.

. . .

3. It is in the juvenile's best interest that the juvenile's placement and care be the responsibility of the Department of Social Services and the agency shall arrange for the foster care or other placement of the juvenile. Placement with the [current foster family] is approved but not required. It is in the child's best interest that the Department of Social Services have the authority to obtain medical treatment, educational, psychological, or psychiatric treatment and services as deemed appropriate by the Department of Social Services and/or as required by this court order.

5.[5] Reasonable efforts to eliminate the need for placement are not required or shall cease because such efforts clearly would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time.

6. The filing of a termination petition or motion in the cause is in the child's best interest because adoption is the plan for the juvenile.

7. The best plan of care to achieve a safe, permanent home for the juvenile within a reasonable period of time is adoption.

---

5. There is no conclusion of law no. 4.

8. The permanent plan for the juvenile is adoption.

9. Visitation with the parents one time per month is in the child's best interest.

In regards to the remaining assignments of error not addressed, they are deemed abandoned because respondent-mother failed to set forth an argument within her brief to support those assignments of error. N.C.R. App. P. 28(b)(6) (providing that "[a]ssignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned").

II.

In his appeal, respondent-father argues that the trial court's findings of fact did not support its conclusions of law that reunification efforts should cease and for the permanent plan of adoption. Specifically, respondent-father argues that there is insufficient evidence to support findings of fact nos. 3, 5, 6, 9, 10, 14, 17, 18, 22, 24, 25, and 29. We disagree.

Respondent-father first argues that there is nothing in the record to support findings of fact nos. 3, 5, 6, 17, and 18[6] (set out above) because Dr. Aiello's report is absent. We disagree.

As mentioned above, the trial court at the disposition hearing on 23 August 2005 admitted into evidence Dr. Aiello's report, without objection. Furthermore, respondent-father did not object to the admission of the DSS court report, which referenced Dr. Aiello's opinions. Hence, the trial court properly considered the reports and had competent evidence in order to support these findings. *See Ivey*, 156 N.C. App. at 402, 576 S.E.2d at 390.

[10] As to findings of fact nos. 9 and 10, respondent-father argues that without a copy of the Family Service Plan, the trial court was unable to determine whether respondent-father actually complied with the plan. We disagree.

As mentioned above, a careful review of the record reveals that the Family Service Plan itself was apparently not admitted into evidence and was not included in the record on appeal. However, also as above, the record does not show that respondent-father made an objection to the trial court considering any reference to the Family

---

6. Respondent-father included finding of fact no. 4 in his argument, but as he did not assign error to this finding, we do not address it.

IN RE S.J.M.

[184 N.C. App. 42 (2007)]

Service Plan because it was not admitted into evidence. Therefore, respondent-father failed to preserve this issue for appeal. N.C.R. App. P. 10(b)(1) (providing that "[i]n order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context").

Assuming *arguendo* that this assignment was preserved for appeal, the DSS court report dated 22 November 2005 outlined requirements from the Family Service Plan relating to respondent-father. According to the report, respondent-father was required to attend all mental health appointments, take his medicine regularly and as prescribed, meet with a support person weekly around anger management issues, complete parenting classes, demonstrate and discuss non-physical discipline techniques with social worker, call support persons for help as needed, and access county transportation or other means of transportation for appointments and visitations.

Here, DSS showed that respondent-father failed to complete his parenting classes, failed to make his mental health appointments, and started to report soft hallucinations. Although the record may not contain evidence as to each of the requirements above, respondent-father's failure to meet the two major requirements of attending parenting classes and attending mental health appointments certainly constitutes competent evidence for the trial court's finding.

[11] Findings of fact nos. 14 and 17, as mentioned above, state that "[t]he parents have not demonstrated an ability to safely parent this child" and that the ·child "is exposed to a substantial risk of physical injury or abuse because the parent is unable to provide adequate supervision or protection." Respondent-father argues that there is simply no evidence in the record to support these findings. We disagree.

Here, the facts show that: (1) respondents were unable to care for juvenile without assistance; (2) respondents had difficulties in making a budget and schedule and with a child in the home, these difficulties would be amplified; (3) respondents were not ready to take the minor child home immediately; and (4) respondent-father did not complete his parenting classes or keep his mental health appointments. Undoubtedly, the trial court felt that respondent-father's refusal to accept treatment for his mental health problem created a substantial likelihood that respondent-father would be unable to ade- .

quately supervise S.J.M. were the child returned to his care. The record reveals competent evidence on which these findings of fact were based, and respondent-father's assignment of error is therefore overruled.

As to finding of fact no. 22, respondent-father argues as respondent-mother did that there is nothing in the record to indicate that the reduction in visitation was in the best interest of the minor child. This argument is without merit.

As with respondent-mother, respondent-father failed to assign error to finding of fact no. 21, which means it is binding on this Court. *See Montgomery*, 311 N.C. at 110-11, 316 S.E.2d at 252-53. The same conclusion as to gradually ceasing visitation holds true here as well, and we find that the trial court properly reduced the visitation based on the best interest of juvenile.

[12] As to finding of fact no. 24, respondent-father argues that the DSS court report and guardian *ad litem* report received into evidence and incorporated by reference are filled with unreliable information and hearsay. However, respondent-father made no objection to the social worker and guardian *ad litem's* reports being admitted into evidence at the hearing. Per Rule 10(b)(1) of the North Carolina Rules of Appellate Procedure, an appellant cannot raise an argument at the appellate level for the first time on appeal. N.C.R. App. P. 10(b)(1) (providing that "[i]n order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context"). Thus, respondent-father failed to properly preserve this argument for appeal.

Assuming *arguendo* this argument was properly preserved for appeal, however, it is without merit because the trial court may properly consider all written reports and materials submitted in connection with the proceedings. *See Ivey*, 156 N.C. App. at 402, 576 S.E.2d at 390. Therefore, this argument is without merit.

[13] Finally, as to finding of fact no. 29, respondent-father contends that the trial court rushed to judgment, because he was making progress when it found that "[i]t is not possible for the juvenile to be returned home immediately or within the next six (6) months and it is not in the juvenile's best interest to return home because of the cognitive limitations of the parents." We disagree.

**IN RE·S.J.M.**

[184 N.C. App. 42 (2007)]

Here, DSS presented evidence to show that respondent-father (1) had made limited progress, (2) had failed to complete his parenting class; and (3) had failed to keep his mental health appointments. Additionally, Ms. Hannah was unable to definitely state that within the next six months the minor child might be able to be returned to the home. Based on the evidence in the record, the trial court did not err in this finding of fact, and we overrule this assignment of error.

Respondent-father next argues that the trial court erred in its conclusions of law nos. 1, 3, 5, 6, 7, 8, and 9 (laid out above). We disagree.

As mentioned above, in a permanency planning, the trial court must find facts, based on credible evidence from the hearing, to support a conclusion of law to cease reunification efforts before it can order such a cessation. *Weiler*, 158 N.C. App. at 477, 581 S.E.2d at 137.

As stated above, we hold that competent evidence was presented at the hearing to support the trial court's findings of fact. The deficiencies in parenting abilities found by the trial court support the conclusion that adoption is in the child's best interests, and thus reunification efforts should cease.

In regards to the remaining assignments of error not addressed, they are deemed abandoned because respondent-father failed to set forth an argument within his brief to support those assignments of error. N.C.R. App. P. 28(b)(6) (providing that "[a]ssignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned").

Affirmed as to both respondents.

Judge STEELMAN concurs.

Judge WYNN dissents in a separate opinion.

WYNN, Judge, dissenting.

"[A] trial court's general jurisdiction over the type of proceeding or over the parties does not confer jurisdiction over the specific action." *In re A.B.D.*, 173 N.C. App. 77, 86, 617 S.E.2d 707, 714 (2005) (quotation and citation omitted). Indeed, "before a court may act there must be some appropriate application invoking the judicial

power of the court with respect to the matter in question." *Id.* (quotation and citations omitted). Because I find that DSS has failed to show that an "appropriate application invoking the judicial power of the court," namely a summons, was issued in this matter, I conclude that the trial court lacked the subject matter jurisdiction to hear this case. I would therefore vacate the trial court's order.

North Carolina General Statute § 7B-401 states that "[t]he pleading in an abuse, neglect, or dependency action is the petition. The process in an abuse, neglect, or dependency action is the summons." N.C. Gen. Stat. § 7B-401 (2005). This Court has held that when no summons is issued, the trial court does not acquire subject matter jurisdiction, and the underlying order must be vacated. *See In re Mitchell*, 126 N.C. App. 432, 433, 485 S.E.2d 623, 624 (1997) (vacating the trial court's order and holding that "[w]here no summons is issued the court acquires jurisdiction over neither the persons nor the subject matter of the jurisdiction."). Nevertheless, "any act which constitutes a general appearance obviates the necessity of *service of summons* and waives the right to challenge the court's exercise of *personal jurisdiction* over the party making the general appearance." *A.B.D.*, 173 N.C. App. at 83, 617 S.E.2d at 712 (quotation and citation omitted) (emphasis added). Significantly, however, "[a] court cannot undertake to adjudicate a controversy on its own motion; rather, it can adjudicate a controversy *only when a party presents the controversy to it*[.]" *Id.* at 87, 617 S.E.2d at 714 (quotation and citation omitted) (emphasis added).

In the *A.B.D.* case, this Court held that a "termination of parental rights action should have been treated as if it had never been filed" because a summons had lost its vitality. *Id.* at 86-87, 617 S.E.2d at 713-14 (quotation and citation omitted). The petitioner in that case had issued a summons but failed to serve the summons on the respondent within the required thirty days, and further failed to obtain an endorsement, extension, or alias/pluries summons that would have kept the summons from becoming dormant. *Id.* at 84-86, 617 S.E.2d at 712-13. We therefore concluded that the failure to extend the original summons meant that "the termination of parental action should have been treated as if it had never been filed[,]" and, relevant to the instant case, "where an action has not been filed, a trial court necessarily lacks subject matter jurisdiction." *Id.* at 86, 617 S.E.2d at 713.

I find the *A.B.D.* case to be controlling here. Where, in *A.B.D.*, a summons had merely lost its vitality, here the court file and record

**IN RE S.J.M.**

[184 N.C. App. 42 (2007)]

show no summons was ever issued at all.[7] Indeed, during the 24 June 2005 review hearing, and in its Order on Need for Continued Nonsecure Custody, the trial court noted that no summons had been issued to Respondents. Despite this notice of a lack of summons, DSS moved forward with its case, and the record fails to indicate when, or whether, a summons was ever issued. Without a summons, the trial court had no subject matter jurisdiction over this specific matter, even if it has general jurisdiction to hear juvenile cases.

Moreover, although the majority correctly notes that Respondents appeared at several of the hearings at the trial court level, and had representation through both counsel and guardians *ad litem*, those appearances waived personal jurisdiction only, not the subject matter jurisdiction of the court. North Carolina General Statute § 1-75.7 states that "[a] court of this State *having jurisdiction of the subject matter* may, without serving a summons upon him, exercise jurisdiction in an action over a person: (1) Who makes a general appearance in an action[.]". N.C. Gen. Stat. § 1-75.7 (2005) (emphasis added). Thus, a trial court must first acquire subject matter jurisdiction over a specific matter before it can determine that it has personal jurisdiction by virtue of a waiver through general appearance.

Our cases have largely dealt with the issue of personal jurisdiction in such matters, not subject matter jurisdiction, and have occasionally conflated the two. *See, e.g., In re A.J.M.*, 177 N.C. App. 745, 751-52, 630 S.E.2d 33, 37 (2006) (finding that respondent had waived the right to challenge insufficiency of service of process and lack of personal jurisdiction by making a general appearance); *In re Howell*, 161 N.C. App. 650, 655-56, 589 S.E.2d 157, 160 (2003) (finding that trial court gained jurisdiction over the respondent through her waiver and

---

7. I would also deny the DSS Amended Motion to Amend the Record on Appeal, which the majority grants. Under our Rules of Appellate Procedure, the record on appeal of a termination order must include "a copy of the summons with return, or of other papers showing jurisdiction of the trial court over person or property, or a statement showing same[.]" N.C. R. App. P. 9(a)(1)(c). Moreover, "[e]very pleading, motion, affidavit, or other paper included in the record on appeal *shall show the date on which it was filed* and, if verified, the date of verification and the person who verified." N.C. R. App. P. 9(b)(3) (emphasis added).

Here, although DSS has offered an affidavit from the Clerk stating that she issued a summons in this case, and has attached a copy of that summons to their Motion to Amend the Record on Appeal, the copy provided has no time or date stamp showing that it was actually issued or filed in a timely manner. This copy therefore does not meet the requirements of our appellate rules and, as such, cannot be included in the record on appeal.

general appearances); *Mitchell*, 126 N.C. App. at 434, 485 S.E.2d at 624 (vacating order adjudicating juvenile neglected because no summons was issued so trial court did not have subject matter jurisdiction nor personal jurisdiction because respondent objected to insufficiency of service of process at initial hearing); *In re J.L.P.*, 181 N.C. App. 606, 640 S.E.2d 446 (2007) (finding that juvenile had waived defense of insufficiency of process by making general appearance and not objecting at hearing, but making no statement as to subject matter jurisdiction even though no summons issued); *In re A.W.M.*, 176 N.C. App. 766, 627 S.E.2d 351 (unpublished, No. COA05-886, 21 Mar. 2006) (finding that respondent had waived issue of insufficiency of process by "fully participating in all proceedings of the trial court without raising the issue" but making no specific statement as to subject matter jurisdiction even though no summons was issued), *disc. review denied*, 361 N.C. 219, 642 S.E.2d 241 (2007).

Nevertheless, given the uncertain history of the copy of the summons in this case, I conclude that the court file and record lack evidence that the summons was issued in a timely manner. I would therefore vacate the order of the trial court for lack of subject matter jurisdiction in this matter. The purpose of a summons to confer subject matter jurisdiction on a trial court, and the requisite distinction between the ability to waive personal jurisdiction but not subject matter jurisdiction, are questions fundamental to our judicial system. Accordingly, I respectfully dissent from the majority opinion.