IN THE MATTER OF: N.M.T., MINOR CHILD.
No. COA08-465
Court of Appeals of North Carolina.
Filed September 16, 2008
This case not for publication
Mecklenburg County Attorney's Office, by Tyrone C. Wade, for Petitioner Mecklenburg County Youth and Family Services.
North Carolina Administrative Office of the Courts, by Associate Legal Counsel Pamela Newell Williams, for Guardian ad Litem.
Annick Lenoir-Peek for Respondent-Father.
Michael E. Casterline for Respondent-Mother.
STEPHENS, Judge.
Respondent-Mother appeals from an order in which the trial court concluded that it is in the best interest of Respondent-Mother's sixteen-month-old child to be placed in the legal and physical custody of Respondent-Father, who resides in Mexico. Respondent-Mother argues that the order should be reversed because the trial court's conclusion was not supported by its findings of fact. The Guardian ad litem ("GAL") agrees with Respondent-Mother. Petitioner Mecklenburg County Youth and Family Services ("YFS") argues that the order should be affirmed because the trial court's findings support the conclusion. Respondent-Father agrees with YFS. We agree with Respondent-Mother and the GAL and reverse the court's order.
In August 2006, Respondent-Mother was seventeen years old, in the legal custody of YFS, and living in a foster home. At the end of that month, Respondent-Mother gave birth to "Nicole,"[1] her second child. On 1 September 2006, YFS filed a juvenile petition alleging that Nicole was neglected and dependent. YFS further alleged that Respondent-Mother's first child was in YFS's custody and had been "freed for adoption." Although the petition stated that Nicole's paternity had not been established, the petition named Respondent-Father as Nicole's father, and the trial court later found that Respondent-Father signed an affidavit of paternity before YFS filed the petition. The day the petition was filed, the trial court entered an order for non secure custody, and YFS placed Nicole in the foster home with Respondent-Mother.
At a hearing held 7 September 2006 to determine the need for YFS's continued custody of Nicole, Respondent-Mother consented to YFS's continued custody, and the trial court ordered YFS to continue its custody of Nicole. Respondents subsequently entered into family services agreements.
The trial court conducted adjudicatory and dispositional hearings on 1 November 2006. According to a report prepared by the GAL for the hearing, Respondent-Mother ran away from the foster home with Nicole on 22 October 2006, and YFS thereafter placed Respondent-Mother in a separate foster home from Nicole. In an adjudicatory and dispositional order filed 1 December 2006, the trial court: (1) adjudicated Nicole dependent, (2) ordered YFS to maintain custody of Nicole, (3) ordered Respondents to comply with their family services agreements, and (4) adopted the goal of reunification for Nicole and Respondents. In a separate order entered 1 December, the trial court ordered Respondent-Father to pay $100.00 per month in child support.
The trial court conducted a review hearing on 13 February 2007. In a review order filed 19 February 2007, the trial court found that Respondents were complying with their family services agreements. The court also stated, "The Court is of the opinion that the parents will move in together when [Respondent-Mother] turns (18) eighteen [on 10 March 2007]." Wanting to see "if [the] relationship [was] to last[,]" the court kept Nicole in YFS's custody, but stated that "reunification is the primary plan[.]"
The trial court conducted another review hearing on 10 May 2007. In a review order filed that day, the court stated that Respondents had "made good progress[,]" but that the court needed to assess a recent incident of domestic violence which allegedly occurred on 6 May 2007 between Respondents in Nicole's presence. The court stated that it "was very close to divestment at the last hearing[,]" and that "the primary plan is still reunification."
Neither Respondent appeared at a review hearing held 27 June 2007. In a review order filed 28 June 2007, the trial court stated that, since the last hearing, Respondent-Father had been arrested and was incarcerated. The trial court found that Respondent-Father's attorney had asked YFS to explore placing Nicole with paternal relatives in Mexico. The trial court ordered YFS to obtain a passport for Nicole.
The trial court conducted a permanency planning hearing on 11 September 2007. In an order filed 13 September 2007, the trial court found that Respondent-Mother had not submitted to random urinalyses and had not addressed the court's domestic violence and mental health concerns, and that Respondent-Father was still incarcerated and was facing deportation. The court ordered Respondent-Mother to submit to a drug test within twenty-four hours. The trial court stated that "[r]eunification is still the primary plan[.]"
The court conducted a subsequent permanency planning hearing on 29 November 2007. In an order entered that day, the court found that Respondent-Mother was not complying with her case plan and that Respondent-Father was in Mexico. The court stated that it was in Nicole's best interest "to achieve a permanent plan in a short period of time." Further, the court stated that "[t]he plan has always been reunification with parents[;] however, [Respondent-Father] appears much closer to reunification." The court noted that "[t]here has been no finding of fact as to [domestic violence]." The court stated that "reunification with [Respondent-Father] or [Respondent-Mother] is still the primary plan[.]" On 14 January 2008, the trial court conducted another permanency planning hearing. The court received the reports of YFS and the GAL, YFS's reasonable efforts report, and heard the arguments of counsel, but the court did not hear any sworn testimony. In its report, YFS stated that Nicole was "thriv[ing]" in her foster home. YFS recommended that Nicole remain in its custody and additionally recommended that the trial court: (1) change the goal to reunification with Respondent-Father with a concurrent goal of guardianship with a relative, (2) cease Respondent-Mother's visitation rights, and (3) discontinue reasonable efforts as to Respondent-Mother. At the hearing, YFS asked the trial court to adopt the report's recommendations and to cease reunification efforts with Respondent-Father at the next hearing. The GAL, like YFS, recommended in its report that Nicole remain in YFS's custody and in her current foster home.
In an order filed 18 January 2008, the trial court concluded that it was in Nicole's best interest to be placed in the legal and physical custody of Respondent-Father. In support of this conclusion, the trial court "incorporate[d] YFS [report], Reasonable Efforts report[,] and GAL report herein by reference as its findings of fact." The court did not grant custody of Nicole to Respondent-Father, but ordered YFS to "provide for reunification with [Respondent-Father] as soon as possible and practical" and ordered "that legal custody be placed with [Respondent-Father] as soon as possible[.]" On 13 February 2008, Respondent-Mother filed a notice of appeal. On 10 March 2008, the trial court ordered YFS to transport Nicole to Respondent-Father in Mexico "immediately and without delay." On 14 March 2008, Respondent-Mother filed a motion for temporary stay and a petition for writ of supersede as in this Court seeking review of the trial court's 18 January 2008 order. We granted Respondent-Mother's motion on 14 March 2008 and allowed Respondent-Mother's petition on 26 March 2008.
By her sole argument on appeal, Respondent-Mother argues that the trial court's conclusion that it was in Nicole's best interest to be reunited with Respondent-Father in Mexico was not supported by the trial court's findings of fact. See In re S.J.M., 184 N.C. App. 42, 47, 645 S.E.2d 798, 801 (2007) ("Appellate review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings and the findings support the conclusions of law.") (quotation marks and citation omitted), aff'd per curiam, 362 N.C. 230, 657 S.E.2d 354 (2008). Respondent-Mother contends that "it is incomprehensible that . . . [Nicole's] best interest lies in joining her father in Mexico." We agree.
The extent of the trial court's findings of fact which could possibly bear on the conclusion of law at issue were as follows:
1. On November 1, 2006, the juvenile[] was[] adjudicated . . . neglected [sic][2] [and] dependent as to the mother; and[] . . . dependent as to the father . . . .
2. The following progress has been made towards alleviating or mitigating the problems that necessitated placement: Father is in Mexico. Evidence is that [Respondent-Mother] is no further along thirty (30) days later [from the date of the last hearing] to provide care and custody of [Nicole].
. . . .
16. Other Findings: The Court incorporates YFS [report], Reasonable Efforts report[,] and GAL report herein by reference as its findings of fact. The Court finds no substantial reason at this time not to return child to the home of [Respondent-Father]. [Respondent-Mother's] conditions appear essentially the same as at last review.
Assuming arguendo that the trial court properly incorporated the YFS and GAL reports as its findings of fact, but see In re M.R.D.C., 166 N.C. App. 693, 698, 603 S.E.2d 890, 893 (2004) ("[A]lthough the trial court may properly incorporate various reports into its order, it may not use these as a substitute for its own independent review."), disc. review denied, 359 N.C. 321, 611 S.E.2d 413 (2005); In re J.S., 165 N.C. App. 509, 511, 598 S.E.2d 658, 660 (2004) ("[T]he trial court should not broadly incorporate . . . written reports from outside sources as its findings of fact."), the facts which the trial court incorporated from the YFS report included the following: Respondent-Father left the United States in September 2007 and never contacted YFS concerning Nicole; YFS last contacted Respondent-Father in November 2007; Respondent-Father's last known phone number was out of service; working with the Mexican consulate in Raleigh, YFS arranged for Mexican authorities to conduct a home study of Respondent-Father's residence in November 2007;[3] the home study indicated that Respondent-Father had "appropriate housing[;]" YFS had not seen any pictures of the residence; YFS expressed to the trial court that Respondent-Father was in a better position than Respondent-Mother to provide stability and care for Nicole; YFS was "concerned with [Respondent-Father's] lack of contact with [YFS] regarding his desire to care for [Nicole][;]" and YFS did not know if Respondent-Father wanted to be reunited with Nicole.[4] The facts which the trial court incorporated from the GAL report included the following: despite numerous messages from the GAL, Respondent-Father never contacted either the GAL or Nicole's foster mother since leaving the country; "[t]here is no indication that the father is even interested in [Nicole's] well[-]being at this time[;]" Respondent-Father had no case plan to provide for Nicole should he be given custody of her; and "disrupting [Nicole's foster family bond] by relocating her to a different cultural and familial environment at this time in her life may cause trauma."[5] The trial court's findings of fact are wholly inadequate to support its conclusion that it was in Nicole's best interest to be removed from an environment in which she was thriving and placed with Respondent-Father in Mexico. Although, as YFS suggests, the trial court's findings may support a conclusion that Respondent-Father was better suited to care for Nicole than was Respondent-Mother, the "best interest" of Nicole is the "polar star."In re Montgomery, 311 N.C. 101, 109, 316 S.E.2d 246, 251 (1984) (emphasis added). We disagree with YFS's contention that the court's conclusion is supported by the finding that the trial court had "no substantial reason at this time not to return [Nicole] to the home of [Respondent-Father][.]" The question before the trial court was not whether there was any reason not to return Nicole to Respondent-Father, but whether returning Nicole to Respondent-Father was in Nicole's best interest.
Furthermore, in ordering a change in Nicole's custodial status, the trial court was not limited to picking between the two parents and need not have placed Nicole with either parent. N.C. Gen. Stat. § 7B-907 (2007). Before determining that placing Nicole with Respondent-Father was in Nicole's best interest, however, the trial court was required to make findings of fact with respect to whether placement with Respondent-Father was "suitable[.]"
At the conclusion of the [permanency planning] hearing, the judge shall make specific findings as to the best plan of care to achieve a safe, permanent home for the juvenile within a reasonable period of time. The judge may . . . make any disposition authorized by G.S. 7B-903 including the authority to place the child in the custody of either parent . . . found by the court to be suitable and found by the court to be in the best interest of the juvenile.
N.C. Gen. Stat. § 7B-907(c) (2007) (emphasis added). In this case, the trial court did not make a finding of fact that placement with Respondent-Father was suitable. Although the YFS report states that the Mexican home study, which was not incorporated into the trial court's order, was completed in November 2007 and "indicates that [Respondent-Father] has appropriate housing," this statement does not constitute a finding of fact that placement with Respondent-Father is suitable. It does not even constitute a finding of fact that Respondent-Father has appropriate housing. It merely acknowledges that the home study indicated that housing was adequate. Given that both the YFS and GAL reports contain concerns about Respondent-Father's apparent lack of interest in Nicole's well-being, it is difficult to see how placement with him could be suitable, absent specific findings of fact.
The court's conclusion is not supported by its findings, and the order is reversed.
REVERSED.
Judges McCULLOUGH and JACKSON concur.
Report per Rule 30(e).
NOTES
[1] We use the pseudonym, "Nicole," to protect the child's identity and for ease of reading.
[2] Following the 1 November 2006 hearing, the trial court adjudicated Nicole "dependent as to her mother." The trial court did not adjudicate Nicole neglected as to either Respondent.
[3] The home study included in the record on appeal is written in Spanish. A "Courtesy Translation" of the home study is also included in the record on appeal.
[4] YFS recommended that Nicole remain in YFS's custody and that the trial court order Respondent-Father to comply with his family services agreement, "if he desires to be reunified with his daughter." (Emphasis added.)
[5] The GAL recommended that Nicole remain in her foster care placement pending a determination of whether Respondent-Father's home was "suitable."